**No. 25-2230**

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,
*Plaintiff-Appellee,*

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; NATIONAL INSTITUTES OF HEALTH; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education; GENERAL SERVICES ADMINISTRATION; EDWARD FORST, in his official capacity as Administrator of the United States General Services Administration; UNITED STATES DEPARTMENT OF ENERGY; CHRISTOPHER A. WRIGHT, in his official capacity as Secretary of the Department of Energy; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, in his official capacity as Acting Director of the United States National Science Foundation; UNITED STATES DEPARTMENT OF DEFENSE; PETER HEGSETH, in his official capacity as Secretary of the United States Department of Defense; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; JARED ISAACMAN, in his official capacity as Administrator of the National Aeronautics and Space Administration; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, in his official capacity as Secretary of Housing and Urban Development; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE L. ROLLINS, in her official capacity as Secretary of Agriculture,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Massachusetts, No. 25-cv-11048

**BRIEF OF AMICUS CURIAE NATIONAL JEWISH ADVOCACY CENTER IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL**

DOUGLAS S. BROOKS (BBO No. 636697)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

NATIONAL JEWISH ADVOCACY CENTER
954 Airport Road, Suite 1196
Atlanta, GA 30341
(332) 278-1100
njac@njaclaw.org

*Attorneys for Amicus Curiae*

## TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT ........................................................ 1

INTEREST OF AMICUS CURIAE ........................................................ 2

SUMMARY OF ARGUMENT ........................................................ 3

ARGUMENT ........................................................ 5

I. A Decline in Overt Incidents on Harvard's Campus Coincides with Jewish Students Hiding. ........................................................ 5

II. Because Harvard Bears the Burden of Establishing Improvement, and Cannot Carry It on This Record, No Judgment in Harvard's Favor May Rest on the Premise That Antisemitism Has Abated. ........................................................ 8

III. Preliminary, Self-Reported Climate Data Cannot Carry a Finding of Improvement. ........................................................ 11

IV. However This Court Rules, Its Opinion Should Not Embed Abatement as a Finding. ........................................................ 13

CONCLUSION ........................................................ 16

CERTIFICATE OF COMPLIANCE ........................................................ 17

CERTIFICATE OF SERVICE ........................................................ 18

## TABLE OF AUTHORITIES

### CASES

*ACLU of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44 (1st Cir. 2013)....13

*Beerheide v. Suthers*, 286 F.3d 1179 (10th Cir. 2002)....14

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999)....6

*Doe v. Morgan State University*, 544 F. Supp. 3d 563 (D. Md. 2021)....7

*Doe v. Sarah Lawrence College*, 453 F. Supp. 3d 653 (S.D.N.Y. 2020)....7

*Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021)....14

*Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022)....14

*FBI v. Fikre*, 601 U.S. 234 (2024)....9, 12

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)....9, 12

*MDB v. Punxsutawney Christian School*, 386 F. Supp. 3d 565 (W.D. Pa. 2019)....7

*Ramos-Ramos v. Jordán-Conde*, 171 F.4th 438 (1st Cir. 2026)....13

*StandWithUs Center for Legal Justice v. Massachusetts Institute of Technology*, 742 F. Supp. 3d 133 (D. Mass. 2024)....7, 8

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968)....12

### STATUTES AND RULES

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d....passim

Fed. R. App. P. 29(a)(4)(E)....2

Fed. R. App. P. 29(a)(5)....17

Fed. R. App. P. 32(a)(5), (a)(6), (a)(7)(B), (f), (g)....17

Fed. R. Evid. 201(b)....14

### OTHER AUTHORITIES

Open Letter from Harvard Faculty & Staff to Jewish and Israeli Students (July 2, 2026)....passim

Mark C. Poznansky & Jacqueline A. Hart, *Harvard's Antisemitism Problem Has Gone Underground*, The Free Press (July 2, 2026)........................................3, 5, 11

Press Release, U.S. Dep't of Justice, *Justice Department Sues Harvard University for Antisemitism* (Mar. 20, 2026) ........................................................................12

Addendum ("Add.") A5 ...........................................................................12

Add. A12–13 ..........................................................................................12

Add. A79 ................................................................................................14

Add. A81 ................................................................................................14

## CORPORATE DISCLOSURE STATEMENT

The National Jewish Advocacy Center, Inc. is a nonprofit organization. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

## INTEREST OF AMICUS CURIAE

The National Jewish Advocacy Center ("NJAC") is a national legal advocacy organization that represents Jewish individuals, students, and communal institutions in civil rights litigation across the United States, including actions under Title VI of the Civil Rights Act of 1964.[1] NJAC's docket and its daily intake give it direct, current knowledge of what Jewish students on American campuses are reporting, and of the gap that can open between an institution's public account of its climate and the experience of the students living in it.

NJAC files in support of Defendants-Appellants. The most recent evidence from within Harvard confirms the predicate on which the government acted: a campus where Jewish students conceal who they are to get through the day. NJAC writes on a single, narrow point: this Court should not adopt, as a premise of its decision or as a finding in its opinion, the proposition that antisemitism at Harvard has abated. That proposition is contested, the evidence offered for it is preliminary, and the most recent statement on the question from Harvard refuses to endorse it without qualification.

[1] No counsel for a party authored this brief in whole or in part, and no person or entity other than amicus curiae and its counsel made a monetary contribution intended to fund its preparation or submission. (Fed. R. App. P. 29(a)(4)(E))

## SUMMARY OF ARGUMENT

This Court is being invited to treat as settled background fact that the climate for Jewish students at Harvard University has meaningfully improved. Yet that fact has not been established, and the most recent evidence on the question points the other way.

Three weeks ago, 170 of Harvard's own faculty and staff published an open letter on this subject. They allowed that the situation has "improved to some extent recently, but challenges remain." Then they described the challenges: over the past year, Jews and Israelis at Harvard have reported hiding their identity, wearing baseball caps over their kippot, tucking in their Stars of David, and scrubbing Jewish-sounding names or activities from their resumes. Two of the signatories, writing the same day, added that students describing these experiences insist on anonymity for fear of retribution. They put the analytical point plainly: when hate quiets on a campus, it has either been eliminated or has morphed into more insidious forms; over the past year, Harvard students and faculty have witnessed the latter.[2]

A decline in reported incidents, as measured by students documented to be concealing their Jewishness and afraid to attach their names to complaints, is not

[2] Open Letter from Harvard Faculty & Staff to Jewish and Israeli Students (July 2, 2026), https://www.thefp.com/api/v1/file/63774b56-6b71-4607-81e4-a40a5a0de1ab.pdf; Mark C. Poznansky & Jacqueline A. Hart, *Harvard's Antisemitism Problem Has Gone Underground*, The Free Press (July 2, 2026), https://www.thefp.com/p/harvards-antisemitism-problem-letter.

evidence of a healed campus. This is what suppression looks like in a spreadsheet. It is also the strongest evidence yet that the intervention Harvard challenges was, in fact, necessary: students do not go underground on a healed campus. Whatever this Court decides about the legal questions presented, its opinion should not launder a contested and moving factual claim into circuit precedent. The Court can resolve this appeal on the law. It should.

## ARGUMENT

### I. A Decline in Overt Incidents on Harvard's Campus Coincides with Jewish Students Hiding.

Start with what Harvard's own community said last. On July 2, 2026, 170 Jewish and non-Jewish Harvard faculty and staff published an open letter to Jewish and Israeli students (the "Open Letter"). The Open Letter concedes partial progress in a single clause and spends the rest of its length on what that clause conceals. Its authors report that over the past year, the very period in which Harvard's campus reforms meant to stop antisemitism took effect, Jews and Israelis at Harvard were forced to hide who they are: caps over kippot, Stars of David tucked out of sight, Jewish-sounding names or activities deleted from resumes. The Open Letter elaborates further: gay Jewish students are excluded from LGBTQ organizations in the College and at the law school after they refuse to renounce Zionism; an Israeli undergraduate is told by an instructor to leave a classroom because her being Israeli made other students uncomfortable; two signatories, writing the same day, report that students describe these circumstances "while insisting on anonymity for fear of retribution."[3]

This Court has a responsibility to apply the test this Court would apply for any other protected group. Run the substitution test: If Black students at a federally

[3] Open Letter, *supra* note 2; Poznansky & Hart, *supra* note 2.

funded university were reported, by 170 members of that university's own faculty, to be concealing identifying markers and scrubbing their names from resumes to avoid ostracism, no court would describe racial discrimination on that campus as "improved," and no litigant would dare ask one to. The description would be understood, immediately and correctly, as evidence that discrimination had gone underground, and that the burden of coping with it had been shifted onto its targets. This analysis does not change because the students are Jews.

To be clear, open and overt incidents appear to have declined somewhat this academic year, and the reforms adopted at Harvard deserve a share of the credit for that decline. But this is an incorrect measure of success. The metric that matters is whether a Jewish student can be visibly and identifiably Jewish at Harvard without paying for it with their physical, mental, emotional, and academic safety or security. On the most recent evidence, from the institution's own faculty, the answer remains no.

That reading is the law's reading. Under *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), delineating the Supreme Court's framework for peer harassment at federally funded schools, the injury a hostile environment inflicts is measured by deprivation of access: harassment "so severe, pervasive, and objectively offensive" that victims are "effectively denied equal access to an institution's resources and opportunities." *Id*. at 651 (citation omitted).

Concealment and withdrawal are what that denial looks like from the inside. Courts have treated fear of retaliation and retreat from campus life as evidence that a hostile environment persists, and a plaintiff need not show fresh incidents after reporting to show that the environment endures. *See Doe v. Sarah Lawrence College*, 453 F. Supp. 3d 653, 667 (S.D.N.Y. 2020) (finding retaliation created a hostile environment where a student who reported her sexual assault received harassing text messages and phone calls, rumors spread on campus about her, faculty demeaned her, and she was not fully advised of her rights and options as a victim); *Doe v. Morgan State University*, 544 F. Supp. 3d 563, 580–81 (D. Md. 2021) (finding that a student's withdrawal from the university track team due to safety concerns when coaching staff did not remove a teammate she alleged sexually assaulted her did not undermine the student's claim against the university but instead may be indicative of the university's indifference to her plight); *MDB v. Punxsutawney Christian School*, 386 F. Supp. 3d 565, 578–79 (W.D. Pa. 2019) (finding plaintiffs plausibly alleged that the school district created a hostile environment or deliberate indifference when facts in the complaint included the school's failure to remove the minor victim's alleged physical and sexual abuser from the same school bus).

Nor is there any dispute that discrimination against Jewish students comes within Title VI's prohibition. *StandWithUs Center for Legal Justice v. Massachusetts Institute of Technology*, 742 F. Supp. 3d 133, 138–40 (D. Mass. 2024)

(*aff'd*, 158 F.4th 1 (1st Cir. 2025), *reh'g en banc denied*, No. 24-1800 (1st Cir. Jan. 21, 2026), *pet. for cert. filed* (U.S. June 18, 2026) (No. 25-1404)) (Jewish students filed Title VI hostile environment claims after experiencing a systematic, prolonged pattern of harassment and intimidation on campus from fellow students following the October 7, 2023 Hamas terror attacks.).

Quiet does not mean cured.

**II. Because Harvard Bears the Burden of Establishing Improvement, and Cannot Carry It on This Record, No Judgment in Harvard's Favor May Rest on the Premise That Antisemitism Has Abated.**

The improvement narrative is not a neutral backdrop to this appeal. It is an affirmative factual proposition, and if any disposition in Harvard's favor is to rest on it, someone must establish it. That someone is Harvard. The party that would benefit from a finding that a years-long hostile environment has healed bears the burden of proving it, and on this record that burden cannot be carried. The Court therefore need not, and should not, treat improvement as an established fact; it may decide the legal questions presented and leave the factual premise where the burden of proof leaves it.

Federal law supplies the governing principle. Mootness is not at issue in this appeal, but the burden-allocation logic of the voluntary-cessation doctrine is directly on point, because Harvard's improvement claim rests on precisely the kind of mid-litigation change of course that the doctrine treats with skepticism. When a party

asks a court to accept that challenged conduct has stopped, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000). That "heavy burden of persua[ding]" the court "lies with the party asserting" the change. *Id.* at 189. The Supreme Court reaffirmed the point two years ago: a party's "voluntary cessation of a challenged practice" carries weight only if it can show the practice cannot "reasonably be expected to recur," a standard the Court again described as "formidable." *FBI v. Fikre*, 601 U.S. 234, 241 (2024).

*Fikre* forecloses the move Harvard invites here. A "sparse declaration" or interim representation that conditions have changed does not carry the burden, because "[w]hat matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct." *Id.* at 244. And a party cannot satisfy its burden by pointing to the other side's conduct: "Nor can a defendant's speculation about a plaintiff's actions make up for a lack of assurance about its own." *Id.* at 243. If a formal governmental assurance of changed behavior cannot carry that burden, an interested institution's preliminary, self-generated climate data cannot carry the far weightier burden of establishing, on appeal, that a multi-year hostile environment has been cured.

Applied here, the improvement premise fails for want of proof, whatever the raw incident numbers show. The evidence offered for it is preliminary by its proponents' own description, self-reported by a population documented to fear reporting, gathered by the institution with a direct interest in the answer, and unaudited by any neutral party. It was collected over an interval of months, measured against a multi-year record of harassment, exclusion, and assault, and assembled while the university's federal funding turns on the answer and while the Department of Justice's Title VI enforcement action, filed March 20, 2026, remains pending. A decline in reported incidents drawn from students who conceal their identities is as consistent with suppression as with peace, and nothing in the data distinguishes the two. That is not a record on which the burden of proving a healed campus can be met, and because it cannot be met, affirmance cannot rest on it.

This allocation of proof does the work the improvement narrative cannot. The Court is not asked to find that antisemitism at Harvard persists, nor to resolve the contested climate question on extra-record materials. It is asked only to recognize that the burden of establishing improvement lies with Harvard, that the burden is a demanding one, and that this record does not carry it. On that footing, the intervention under review cannot be defeated by an unverified premise of improvement, and the judgment below cannot be sustained on one.

## III. Preliminary, Self-Reported Climate Data Cannot Carry a Finding of Improvement.

The improvement narrative rests on early climate data and reduced incident counts. Three features of that evidence disqualify it from bearing the weight of an adjudicated fact.

First, the metrics are self-reported, and the reporting population is documented to be afraid to report. Incident counts measure *willingness to complain* before they measure anything else. When the student-complainants are described by faculty who know them as *insisting* on anonymity for fear of retribution, a falling count is as consistent with fear as with peace, and nothing in the data distinguishes the two.[4]

Second, the data is preliminary by its proponents' own description, gathered by the institution with an interest in the answer, and unaudited by any neutral third party. Courts do not treat a defendant's interim self-assessment as a finding in any other context, and there is no reason to invent the practice here.

Third, the interval is too short for the conclusion. The reforms at issue are mere months old. They are being measured against a multi-year record of

[4] Poznansky & Hart, *supra* note 2 ("While incidents of overt antisemitism and anti-Israeli bias have diminished throughout this academic year at Harvard, Jewish students still report feeling uncomfortable and isolated.").

harassment, exclusion, and assault that the district court record documents at length[5] and that remains the subject of active federal enforcement: on March 20, 2026, the Department of Justice sued Harvard under Title VI, alleging that Jewish and Israeli students were assaulted, harassed, and intimidated on its campus.[6] A few months of quieter numbers, collected while that suit is pending, and while the university's federal funding depends upon the answer, is a data point. It is not a found fact.

Federal law already encodes the skepticism this evidence demands. Mootness is not at issue in this appeal; the doctrine's logic is. Under the voluntary cessation doctrine, courts refuse to take a litigant's word that a challenged problem has been solved once litigation begins: the party claiming its conduct has ceased bears the "formidable burden" of making it "absolutely clear" the behavior could not reasonably be expected to recur. *Laidlaw Environmental Services*, 528 U.S. at 190 (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). A mid-litigation representation of changed behavior does not carry that burden, *Fikre*, 601 U.S. at 242–44 (rejecting the defendant's affidavit asserting it would cease the challenged conduct as a reason to moot the lawsuit), and the doctrine

---

[5] Add. A5 (Harvard "has experienced increased tensions and violence aimed at its Jewish community" since October 7, 2023); Add. A12–13 (Task Force report acknowledging the "alienating and hostile atmosphere" experienced by many Jewish and Israeli students at Harvard).

[6] Press Release, U.S. Dep't of Justice, Justice Department Sues Harvard University for Antisemitism (Mar. 20, 2026), https://www.justice.gov/opa/pr/justice-department-sues-harvard-university-antisemitism.

exists "to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Ramos-Ramos v. Jordán-Conde*, 171 F.4th 438, 443 (1st Cir. 2026) (quoting *ACLU of Massachusetts v. United States Conference of Catholic Bishops*, 705 F.3d 44, 54–55 (1st Cir. 2013)). This Circuit credits cessation most when it results from "a new statute or a ruling in a completely different case," not from a party's own litigation-timed choices. *Ramos-Ramos*, 171 F.4th at 443. If a defendant's formal assurance that it has stopped cannot moot a case, an interested institution's preliminary climate data cannot establish, on appeal, that a years-long hostile environment has healed.

**IV. However This Court Rules, Its Opinion Should Not Embed Abatement as a Finding.**

This appeal presents legal questions: the scope of the government's authority over federal grants and the constraints that the Constitution and the APA place on its exercise. Those questions can be answered without adjudicating whether antisemitism at Harvard has abated. That factual question is contested, the record on it is thin and moving, and the matter before this Court is not the correct instance to resolve it. The record that does exist runs against affirmance on any premise of improvement. The district court itself acknowledged that Harvard "has been plagued by antisemitism in recent years and could (and should) have done a better job of dealing with the issue," and that "Harvard was wrong to tolerate hateful behavior for

as long as it did." Add. A79, A81. Jewish students concealing who they are is that record continuing in the present tense. It is why the intervention under review was right, needed, and necessary.

Moreover, the record on appeal is fixed, and this Court's review "is generally limited to the record below." *Does 1-6 v. Mills*, 16 F.4th 20, 26 n.3 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022). Factual assertions in amicus briefs are not evidence of anything; courts of appeals "do not rely on factual matters presented in those briefs that were not established at trial." *Beerheide v. Suthers*, 286 F.3d 1179, 1182 n.1 (10th Cir. 2002). That rule disciplines every friend of this Court, including this one: nothing any amicus says about conditions at Harvard this month is record evidence.

Nor can judicial notice fill the gap. Rule 201 confines notice to facts "not subject to reasonable dispute because (1) it is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *See also, Does 1-6*, 16 F.4th at 26 n.3. A climate assessment that 170 of the university's own faculty declined to endorse without qualification three weeks ago is the definition of a fact subject to reasonable dispute.

Because the true conditions of the climate at Harvard's campus and the validity of the Open Letter are in dispute, this Court should avoid a discussion of

whether antisemitism at Harvard has truly abated, even in dicta. A sentence of dictum would outlive this appeal. A statement from this Court that conditions for Jewish students at Harvard have improved would be quoted in the pending Title VI enforcement action, in private suits, and in campus litigation nationwide for a decade, by institutions seeking to defeat claims brought by the very students who chose concealment based on their fear—thus the quiet. The students wearing caps over their kippot and hiding their Stars of David would find their own silence cited against them. This Court should not supply that sentence.

The faculty Open Letter closed by telling Jewish and Israeli students: "We see you. We hear you." A court need not say that. It need only decline to say the opposite. Decide the law and leave the climate to a record that can prove it.

## CONCLUSION

For these reasons and those stated by appellants, the judgment below should be reversed. However the Court resolves the legal questions presented, its disposition should not rest on a factual premise of improvement that Harvard's own faculty, three weeks ago, declined to endorse without qualification.

July 31, 2026

Respectfully submitted,

/s/ *Douglas S. Brooks*
DOUGLAS S. BROOKS (BBO No. 636697)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that this document complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3314 words, and complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Douglas S. Brooks*
DOUGLAS S. BROOKS

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on July 31, 2026, I caused the foregoing to be electronically filed with the Clerk of Court for the United States Court of Appeals for the First Circuit using the CM/ECF system, which will serve all counsel of record.

/s/ *Douglas S. Brooks*
DOUGLAS S. BROOKS

*Counsel for Amicus Curiae*